UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LESTER E. PATRICK,<br><br>      Plaintiff,<br><br>  v.<br><br>R. JAMES NICHOLSON, Secretary,<br>Department of Veterans Affairs<br><br>      Defendant.<br>_____/ | No. C 05-03280 MHP<br><br>**MEMORANDUM & ORDER**<br>**Re: Defendant's Motion for Summary Judgment; Defendant's Motion to Strike; Plaintiff's Motion to Compel; Plaintiff's Motion to Stay** |

This employment discrimination action arises from a promotion decision in late 2002 by the Department of Veterans Affairs ("VA"). Plaintiff Lester Patrick ("Patrick") contends he was the victim of race discrimination and/or retaliation when the VA declined to select him for a GS-14 position called Supervisory Information Specialist. Patrick filed this action on August 11, 2005. Now before the court is defendant's motion for summary judgment, defendant's motion to strike, plaintiff's motion to compel and plaintiff's motion to stay. The court has considered the parties' arguments fully, and for the reasons set forth below, the court rules as follows.

BACKGROUND

Lester Patrick is an African-American man who began his employment with the VA in 1993 as an Information Technology ("IT") Specialist with a pay grade level of GS-13. He has at all times worked in offices in San Francisco or Livermore, as a remote worker reporting to managers located elsewhere.

In March 2000 Patrick filed a complaint with the Equal Employment Opportunity Commission ("EEOC") claiming he was not being provided the necessary space to support his work

activities. Lee Dec., Exh. R at 3:25–4:5. Patrick sued, then appealed the grant of summary judgment against him, but neglected to prosecute the appeal because he claims the controversy was privately resolved. See Patrick v. Principi, No. C 01-05225 (Feb. 14, 2003 N.D. Cal.) (Alsup, J.).

In October 2000 Patrick filed a second EEOC complaint claiming race discrimination after the VA did not select him for a promotion to Lead Computer Specialist (vacancy OI-00-107), a GS-14 position. Lee Dec., Exh. R at 4:6–12. This led to a second federal action, currently on appeal to the Ninth Circuit after a jury verdict. It seems that action is similar to the current action, wherein Patrick argued that he was illegally denied a promotion and the interim appointee to the open position was eventually chosen for permanent placement.

On September 23, 2002 the VA published the vacancy announcement for a Supervisory Information Specialist position, vacancy OI-02-122 ("Position 122"). Barry Dec., Exh. A. The major duties of the position were set forth as follows:

> The incumbent serves as the Team Manager for the Enterprise Management Center with management responsibilities over VHA's Network Operations and VHA LAN Design and Implementation in the office of the ACIO for Health - Customer Support, Office of Information. Incumbent plans, designs, analyzes, acquires, documents, tests, implements, integrates, maintains, or modifies LAN and other Network IT systems. Evaluates computer network equipment with regard to selection or utilization of designs systems and software for accomplishment of work through IT. Designs, selects, maintains, supports and/or administers various components of VHA's many LAN systems. Serves as a networking specialist for the organization. Develops VHA IT program policies and standards related to the VHA LANs.

Id. The vacancy announcement went on to state the rating factors that would used in evaluating applicants who met the minimum qualification requirements. These factors were:

> 1. Ability to supervise, motivate, develop and train employees, including the general knowledge to manage (direct, plan, control, review, and coordinate) the work activities of technically oriented staff working in remote locations on a wide variety of projects to assure expected outcomes are met.
> 2. Ability to communicate orally and in writing including ability to develop and deliver presentations. This ability must extend to the understanding and communication of technical material in working or teaching environments.
> 3. Ability to analyze organizational and operational problems and develop solutions.
> 4. Extensive knowledge in the design, management and monitoring of large corporate networks and of their associated technologies.

Id.

On October 7, 2002 Patrick submitted his application for Position 122. Lee Decl. Exh. D. Other individuals, including David Bradley ("Bradley), a Caucasian, also applied. Id., Exh. E. On

2

October 9, 2002 the VA, through the selecting official—Gerard Barry ("Barry")—issued a certificate of four eligible candidates, including Patrick and Bradley, for the position. Barry Dec., ¶3.

Barry used a panel of three knowledgeable VA employees—Michael Lay ("Lay"), Anke Linton ("Linton") and Gary Twedt ("Twedt")—to interview and rate the candidates. Id., ¶ 6; Lay Dec., ¶ 3; Linton Dec., ¶ 4; Twedt Dec., ¶ 4. Before conducting the interviews, the panel developed twelve questions to ask each of the candidates. Lay Dec., ¶ 4; Linton Dec., ¶ 5; Twedt Dec., ¶ 5. During this process, panelist Linton added a question regarding supervisory experience to the original version of questions provided by Barry's office. Linton Dec., ¶ 5.

During the telephone interviews held on December 5, 2002, the panel used the same twelve questions with each of the candidates and gave each an equal amount of time to answer. Barry Dec., ¶ 7. They then scored each answer based on a common rating scale with one being the lowest and five the highest. Id.; Lay Dec., ¶ 4; Linton Dec., ¶ 6; Twedt Dec., ¶ 6. Patrick received a score of 120, which ranked him third out of four candidates. Barry Dec., ¶ 8; Linton Dec., ¶ 9; Twedt Dec., ¶ 10. Bradley, by comparison, received a total score of 137.[1] Barry Dec., ¶ 8. It is, however, unclear what the panelists knew of Patrick's prior EEOC activity when they interviewed and scored him. At the conclusion of the interviews, the panelists unanimously agreed that Bradley scored the highest. Lay Dec., ¶ 5; Linton Dec., ¶ 8; Twedt Dec., ¶ 10. Consequently, they recommended that Bradley be hired for Position 122. Barry Dec., ¶ 8; Lay Dec., ¶ 13; Twedt Dec., ¶ 13. Barry agreed with the panel's recommendation and selected Bradley. Barry Dec., ¶ 9. On December 11, 2002 the VA sent Patrick a letter informing him of this decision. Lee Dec., Exh. F.

Concurrently, Patrick applied for another GS-14 position with the VA called IT Specialist, vacancy OI-02-121 ("Position 121"). This position was in a new organization within the VA called the Program Management Office ("PMO") of the Office of Cyber Security. Emery Dec., ¶ 4. The selecting official, Rodney Emery ("Emery"), chose Patrick for Position 121, which was located in Martinsburg, West Virginia. Emery Dec., ¶ 6. On November 26, 2002 with the offer of the position known to him, Patrick expressed a preference for working from a remote location, rather than Martinsburg. Wiles Dec., ¶ 6; see also Emery Dec., ¶ 7. Emery agreed to speak to the Associate

3

Deputy Assistant Secretary for Cyber Security Bruce Brody ("Brody") about Patrick's request. Emery Dec., ¶ 7. Thereafter, Brody informed Patrick that Position 121 would not be staffed with someone at a remote location. Id., ¶ 8. Patrick argued that in the past the VA had usually allowed IT employees to work from remote locations. Id., ¶ 9. Brody responded, stating that this was a new organization with two locations only, Martinsburg or Washington, D.C. Id. During 2002–03, Mr. Emery hired ten to fifteen personnel for the PMO and none worked remotely. Emery Dec., ¶ 4. On December 16, 2002 Mr. Patrick declined the appointment to Position 121, a GS-14 position. Wiles Dec., ¶ 7.

After Patrick learned of his nonselection with respect to the other position, Position 122, he sent an e-mail to Barry and the panelists asking them ten questions about the selection. Barry responded a few days later, telling Patrick he was a strong candidate and encouraging him to apply for future vacancies. Barry Dec., Exh. E; see also Lee Dec., Exh. H.

Patrick sought EEOC counseling for Position 122 on January 15, 2003 and filed his written claim of employment discrimination based on race on February 23, 2003. Lee Decl., Exh. B. Subsequent to a hearing on June 16–17, 2004, Administrative Law Judge Kelley found that Patrick was not discriminated against on the basis of his race. Lee Decl., Exh. S [hereinafter "Administrative Hearing"] at 384:24–385:4.[2] However, Judge Kelley also found that Barry retaliated against Patrick when he informed panelist Twedt about Patrick's prior EEOC activity. Id.; id., Exh. V at 1. This action followed.

LEGAL STANDARD

Summary judgment is proper when the pleadings, discovery and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. The party moving for summary judgment bears the burden of identifying those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material

4

fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). On an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Mere allegations or denials do not defeat a moving party's allegations. Id.; Gasaway v. Nw. Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir. 1994). The court may not make credibility determinations, and inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the motion. Masson v. New Yorker Magazine, 501 U.S. 496, 520 (1991); Anderson, 477 U.S. at 249.

DISCUSSION

I.      Race Discrimination

Title VII makes it illegal for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of discrimination under Title VII, a plaintiff must show: 1) membership in a protected class; 2) satisfactory job performance; 3) adverse employment action; and 4) that plaintiff was treated differently than a similarly situated employee that does not belong to the same protected class. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Cornwell v. Electra Cent. Credit Union, 439 F.3d 1018, 1028 (9th Cir. 2006). In addition:

> Establishing a prima facie case under McDonnell Douglas creates a presumption that the plaintiff's employer undertook the challenged employment action because of the plaintiff's race. To rebut this presumption, the defendant must produce admissible evidence showing that the defendant undertook the challenged employment action for a 'legitimate, nondiscriminatory reason.' If the defendant does so, then 'the presumption of discrimination 'drops out of the picture'' and the plaintiff may defeat summary judgment by satisfying the usual standard of proof required in civil cases under Fed.R.Civ.P. 56(c). In the context of employment discrimination law under Title VII, summary judgment is not appropriate if, based on the evidence in the record, a reasonable jury could conclude by a preponderance of the evidence that the defendant undertook the challenged employment action because of the plaintiff's race.

5

Cornwell, 439 F.3d at 1028 (internal citations omitted). In sum, if the defendant is able to proffer a "legitimate, nondiscriminatory reason," then plaintiff must demonstrate the same is "'pretext or discriminatory in its application.'" Lynn v. Regents of the Univ. of California, 656 F.2d 1337, 1341 (9th Cir. 1981) (quoting McDonnell Douglas Corp., 411 U.S. at 807). Pretext may be shown: 1) directly by demonstrating that a discriminatory motive more likely than not motivated the employer; or 2) indirectly by demonstrating that the employer's proffered explanation is unworthy of credence. Godwin v. Hunt Wesson Inc., 150 F.3d 1217, 1220 (9th Cir. 1998).

All of the panelists and the selecting official deny, under oath, that they engaged in any discriminatory or retaliatory actions directed at Patrick. Barry Dec., ¶¶ 4, 13–15; Lay Dec., ¶ 14; Linton Dec., ¶ 15; Twedt Dec., ¶ 14. This denial, without more, is insufficient to defeat summary judgment because the court does not make credibility determinations on summary judgment.

Defendant concedes, for the purpose of this motion, that plaintiff has made a prima facie claim. He contends, however, that he has a legitimate, non-discriminatory reason for the employment action. Specifically, Bradley was hired over Patrick because, according to the interview panel, Bradley was more qualified. The panelists asked each applicant a common set of relevant questions during a telephone interview and allotted them a fixed amount of time to answer. They claim all the questions asked pertained to the applicant's capacity and qualifications to carry out the position's responsibilities. The panel then ranked each individual according to their answers. Each individual on the interview panel ranked Bradley over Patrick at the conclusion of the interviews and the selecting official then merely effectuated the recommendation of the panel. The panel's recommendation—arguably selecting the most qualified applicant—obviously presents a legitimate, non-discriminatory reason for the selection. The court now turns to whether the proffered reason is pretextual.

Patrick contends the panel was biased against him because they chose Bradley even though he is a better candidate than Bradley.[3] Specifically, he contends that his experience as an adjunct professor at a community college was undervalued and Bradley's years of experience as a supervisor of other VA employees was overvalued. The court discusses each contention in turn.

6

The panel had discretion to credit Patrick's teaching experience. See Lee Dec., Exh. I (appropriate teaching experience could be credited as specialized experience). However, most panel members seem to have given Patrick credit for his teaching experience. See Lay Dec., Exh. A (giving Patrick a score of 4 on the supervisory question and citing Patrick's teaching experience); Linton Dec., Exh. A (giving Patrick a score of 2 on the supervisory question and citing Patrick's teaching experience); but see Twedt Dec., Exh. A (giving Patrick a score of 3, but citing Patrick's limited supervisory experience). Indeed, Patrick himself agreed that the panelists did not have to treat Patrick's teaching experience as equivalent to supervisory experience. Lee Dec., Exh. T [hereinafter "Patrick Dep."] at 197:14–199:1. Furthermore, this "supervisory" experience was with respect to entities other than the VA. In light of the panel's discretion and stated reasons for their score, the court does not find that the panel undervalued Patrick's experience in order to create a pretext for racial discrimination.

Similarly, the panel did not overvalue Bradley's experience in order to create a pretext for racial discrimination. There is no argument that Bradley had relevant supervisory experience with respect to VA employees and plaintiff did not. Indeed, Bradley supervised plaintiff on occasion as demonstrated by the fact that Bradley signed plaintiff's evaluation as the "Rater." See Lee Dec., Exh's. N, O, Q. Further, Bradley's application represented that he received performance awards in 1999, 2001 and 2002 for his leadership roles. Lee Dec., Exh. E at 3–4. Bradley stated that he had been the Acting Team Manager for the EMC Network Operations Team since November 2001. Id. at 12. Furthermore, he was Chief of the Biomedical Engineering at North Chicago VAMC from 1980–86. Consequently, based in part upon Bradley's representation that he had 8–10 years of supervisory experience, each member of the panel gave Bradley a score of 5 on the supervisory question. See Lay Dec., Exh. A; Linton Dec., Exh. A; Twedt Dec., Exh. A.[4] In light of the management responsibilities associated with Position 122 and the panel's un-rebutted rationale for the score, the court finds nothing pretextual about the panel's scoring methodology.

Even if Patrick's argument were credible, he would be, at best, entitled to a score of 5 on the supervisory question. This would lead to an increase of six points in his overall score. He would nevertheless trail Bradley 126 to 137. Furthermore, the same result is reached if the supervisory

7

1 question is eliminated from consideration.  Then, Patrick would trail Bradley 111 to 122.  In sum,
2 Patrick has not demonstrated that he is better qualified than Bradley for Position 122.  Without a
3 demonstration that Patrick is better qualified, this court cannot find the proffered reason—that
4 Bradley was the most qualified—to be a pretext for race discrimination.

5       Plaintiff further argues that Bradley was permitted to act in the supervisory position for
6 several months before the vacancy was announced.  This, he claims, is part of a broader pattern and
7 practice whereby: 1) Caucasians are given interim positions filling a vacancy; 2) the vacancy is
8 publicly announced; and 3) the individual in the interim placement is then selected as the permanent
9 employee.  This alleged practice culminates by convening a farce interview panel that blindly
10 approves the permanent appointment of the interim placement.  Based on the facts of this action, this
11 theory may have some merit.  However, plaintiff failed to exhaust this pattern and practice argument
12 at the administrative hearing stage.  Administrative Hearing at 366:17–385:5; Lee Dec., Exh. V.
13 Specifically, the Administrative Law Judge's order stated the issue as:

> Whether the Complainant was discriminated against based on his race (African-American) and in reprisal for prior EEO activity when Mr. Gerald Barry, Director of VHA Enterprise Management Center, did not select the Complainant for the Supervisory Information Technology (IT) Specialist (Operating Systems Network Services), GS-2210-14 position (Vacancy #01-02-122).

17 Pl's. Opp., Exh. B at 2; see also Complaint.  Plaintiff failed to allege facts or theories that would
18 prompt an investigation into this alleged practice which would be more extensive than the
19 investigation essentially limited to the one promotion based on the allegations Patrick put forth.[5]
20 Consequently, this court lacks jurisdiction to entertain this argument.

21       Nevertheless, the court is concerned about this allegation.  Gail Belles, Associate Chief
22 Information Officer for Customer Support, testified that within her organization no African-
23 American has been temporarily appointed to a GS-14 position and then given the opportunity to
24 apply for that position.  Administrative Hearing at 337:21–338:5.  Furthermore, Bradley's
25 predecessor, Jerry Taylor, a Caucasian, was also temporarily appointed and then permanently
26 promoted into that position once it was publicly announced.  Id. at 328:11–24 (testimony of Gail
27 Belles).  This has occurred at least twice for the five positions at level GS-14 or higher that have
28 been filled under Ms. Belles' watch since 1997.  See generally id. at 327:11–336:13 (testimony of

8

Gail Belles). Plaintiff argues that this has actually occurred roughly thirty times and that the five positions referred to by Ms. Belles only speak to the Enterprise Management Section of Customer Support.

It is unclear to the court how interim placements are made. It seems that the interim placements are completely discretionary. According to Gail Belles, she appointed the person she felt could best continue operations. Administrative Hearing at 337:7–10. There seems to be no oversight or defined procedure with respect to these appointments. Nevertheless, there is evidence that the "incumbent" is likely given a preference when permanent placements are made. See id. at 336:22–337:14 (testimony of Gail Belles) (stating that incumbents perhaps have a "leg up" in the selection procedure).

Bradley and Patrick were similarly situated employees at the time of Bradley's selection—indeed, they had the same job descriptions. See Lee Dec., Exh. K (organizational chart); see also Pl.'s. Opp., Exh F (describing both Bradley and Patrick as "Senior, Operations Team" for the period from April 2001 to March 2002). Defendant contends Bradley was acting as team leader for the Data Networks team when it moved over to be part of the newly constituted Enterprise Management Center. Barry Dec., ¶ 5. Thus, he argues, he has presented a legitimate, non-discriminatory reason to bring Bradley into the acting role—continuity of operations. Administrative Hearing at 329:3–13; 336:14–337:20 (testimony of Gail Belles). This argument is unpersuasive because the VA asks the court to give credence to its post-hoc argument that Bradley was acting team leader. The organizational chart submitted by the VA demonstrates that Bradley and Patrick had the same job title on February 2, 2001, January 1, 2002, and June 1, 2002. Lee Dec., Exh. K. There is a chart dated December 5, 2001 that seems to demonstrate that Patrick was being supervised by Bradley. This chart, however, only has "Team Leader?" associated with Bradley's name. Id.

In light of this discussion, the court urges Patrick to exhaust his remedies at the administrative level since it may bring to light a pattern and practice of race discrimination or arbitrary and capricious procedural standards.[6]

9

1    Plaintiff makes five other arguments that can be easily resolved.  First, he argues that no
2 African-Americans were present on the interview panel.  Unfortunately, there is no constitutional or
3 statutory requirement that an African-American be present on any interview panel for the VA, nor is
4 there a requirement that the panel represent a cross-section of society at large.

5    Second, Patrick argues that the questionnaire was biased against him because it did not
6 include a question on teaching experience or the training of employees.  Other than pure conjecture,
7 Patrick has presented no evidence that the question was purposefully excluded in order to create a
8 pretext for racial discrimination.  Since the VA is free to set out the requirements for the vacant
9 position, the court will not second-guess the VA's decision as to the criteria it believes will lead to
10 the selection of the most qualified candidate for the position.  By arguing that a question about
11 teaching experience should have been included, plaintiff is arguing that each sub-part, no matter how
12 minuscule, of each factor mentioned in the vacancy announcement deserves a dedicated question to
13 that effect during the interview.  There is no legal requirement that plaintiff can point this court to
14 that supports this argument.  This argument also undercuts plaintiff's alternate argument that the
15 supervisory question was inappropriately included.[7]  Furthermore, non-inclusion of a question on
16 teaching experience did not hurt plaintiff—as discussed above, most panel members gave Patrick
17 credit for his teaching experience when scoring the supervisory experience question.  Patrick also
18 claims that the supervisory experience question was added in order to create a bias against him;
19 however, he has presented no evidence that the panel members knew his qualifications when they
20 added the supervisory question.  Notwithstanding the same and also as discussed above, the
21 supervisory question was not determinative when the panel decided to choose Bradley over Patrick.
22 Furthermore, the position in question was a supervisory position.  Supervisorial or equivalent
23 experience is obviously the sine qua non of such a position.  The court notes that contrary to
24 plaintiff's apparent argument, teaching, while important, is not the equivalent of supervising.

25    Third, Patrick contends the VA Merit Promotion Plan prohibits the panel from making a
26 recommendation to the selecting official.  This argument defies logic.  The very purpose of the
27 interview panel is to make a recommendation.  Patrick relies on language in the promotion plan
28 which states, "[t]he responsibility for selection must be vested in one official.  Promotion panels will

10

1  not make final selections or recommendations." Pl's. Opp., Exh. D, VA Merit Promotion Plan at 13.
2  The promotion panel, however, is distinct from the interview panel used in this situation. See
3  Administrative Hearing at 248:19–252:2 (testimony of Ms. Wiles). Consequently, this argument is
4  unpersuasive.

5        Fourth, Patrick argues that budgeting experience was not announced on the vacancy
6  announcement but he was nevertheless asked questions about his budgeting experience.[8] It is
7  unclear to the court why the range of questions asked by an interview panel must necessarily be
8  limited to the specific words used in the position announcement. Plaintiff has not provided a cogent
9  reason for the same. Furthermore, since the position involved management responsibilities over a
10 team of employees, budgeting experience was certainly germane to the position. Consequently,
11 questions about the applicant's budgeting experience were proper. Also, as discussed above, the
12 court will not second-guess the panel's decision regarding particular questions when all applicants
13 were asked the same questions and all questions related to the job's responsibilities.

14       Finally, Patrick contends that the VA's Customer Service units discriminate against
15 African-Americans in promotions generally. This contention, however, has not been exhausted and
16 consequently, the court lacks jurisdiction to entertain this argument. Nevertheless, as of 2003, it
17 seems that the Customer Service unit has only had three GS-14 positions open for competitive
18 selection. Wiles Dec., ¶ 12, Exh. E. In two cases, the individual selected was the only applicant. Id.
19 The third instance forms the basis for this action. Administrative Hearing at 335:14–24 (testimony
20 of Gail Belles). This is insufficient evidence for the court to find generalized racial discrimination.
21 Furthermore, contentions that the entire department, not just the Customer Service unit, generally
22 discriminates against African-Americans is undercut by Patrick's selection for a GS-14 position that
23 he declined to accept.

25 II.    Retaliation

26       To state a prima facie case for retaliation under Title VII, plaintiff must establish that: 1) he
27 was engaged in a statutorily protected activity; 2) defendant took an adverse employment action; and
28 3) a causal connection existed between plaintiff's protected activity and defendant's adverse

11

employment action. Cornwell, 439 F.3d at 1034–35; Akers v. County of San Diego, 95 Cal. App. 4th 1441, 1453 (2002).  Once a prima facie case is established by the plaintiff, the McDonnell Douglas burden shifting analysis described above applies.

      Plaintiff claims his 2000 EEOC activities were protected activities and that he was denied the promotion to Position 122 because of those prior claims.  At the time of the interviews, panelist Twedt knew of Patrick's prior lawsuits, though he denies knowledge of details.  Twedt Dec., ¶ 14. Twedt further testified that he was not aware of Patrick's EEOC activity before his participation in the interview panel.  Administrative Hearing at 294:18–21.  Moreover, Lay admits knowing that one of the interviewees had prior lawsuits, but didn't know which specific one.  Lay Dec., ¶ 14.  Finally, the selecting officer, Barry, knew of Patrick's EEOC claims.  Barry Dec., ¶ 14.  Assuming that Twedt was attempting to retaliate against Patrick, the court excludes his scoring of the candidates to find that the other two panelists nevertheless chose Bradley by a score of 87 to 77.  That is not the end of the matter, however, since there is evidence that all the panelists knew of Patrick's prior EEOC activity.  See Administrative Hearing at 292:2–294:12 (testimony of Gary Twedt).

      Defendant argues that plaintiff's claim for retaliation fails because of the length of time that had elapsed between the plaintiff's protected activity and the adverse employment action.  Time, however, is not dispositive.  Cases cited by defendant that causality is not demonstrated when more than a year has elapsed do not compel an opposite result.  Here, even though two years had passed since Patrick's prior EEOC activity, one inference regarding Barry's rationale for disclosure of Patrick's prior EEOC activity to panel member Twedt is to retaliate against Patrick.  Twedt Dec., ¶ 14.  The court does not speculate as to any other reason—and has not been given one by defendant—regarding Barry's rationale for forwarding this information to Twedt.

      Nevertheless, making all reasonable inferences in plaintiff's favor, his claim of retaliation fails.  Barry's argument that he merely followed the panel's recommendation is a legitimate, non-discriminatory reason that has not been demonstrated to be pretextual.  Plaintiff's bare assertion that the panel retaliated against him due to his prior EEOC activity has no factual support.  It is clear that knowledge of plaintiff's prior EEOC claims *could* negatively influence the interview panel's opinion of plaintiff.  See Administrative Hearing at 330:18–332:5 (Gail Belles' testimony that she thinks

12

knowledge of prior EEOC activity "would give people a negative impression of the person coming in."). However, knowledge of prior activity could also lead the panel to be extremely careful about rejecting Patrick in order to avoid future EEOC or court activity. Consequently, even assuming that each panel member had knowledge of plaintiff's prior EEOC activity does not create a presumption that they retaliated against plaintiff. Indeed, there is not a scintilla of evidence that the panel accepted Barry's alleged implicit invitation to retaliate against Patrick.

Here, mere knowledge is insufficient to rebut the legitimate, non-discriminatory reason provided. If the court was to hold otherwise, it would open the floodgates of discrimination lawsuits based on mere knowledge. For instance, plaintiff could assert race discrimination or age discrimination based on the mere fact that the interview panel knew his race or age. If face-to-face interviews are conducted, then every minority applicant who is not hired for a particular position could argue race discrimination based on the interviewer's knowledge of the interviewee's race. This showing is insufficient to demonstrate pretext under the McDonnell Douglas standard. Indeed, the First Circuit has adopted this rationale:

> To be sure, [the employer] knew, at the time [the employee] was dismissed, that he was pursuing an age discrimination claim. But, that kind of knowledge on an employer's part, without more, cannot itself be sufficient to take a retaliation case to the jury. Were the rule otherwise, then a disgruntled employee, no matter how poor his performance or how contemptuous his attitude toward his supervisors, could effectively inhibit a well-deserved discharge by merely filing, or threatening to file, a discrimination complaint.

Mesnick v. Gen. Elec. Co., 950 F.2d 816, 828 (1st Cir. 1991).

III.     Motion to Compel

Plaintiff seeks the court's assistance in compelling discovery from defendant. Defendant has provided many responsive documents in response to plaintiff's request. Lee Dec. in Opp. to Pl's. Motion to Compel, Exh. D at VA001–26, VA0825–125. Nevertheless, each of plaintiff's requests is considered in turn.[9]

Plaintiff's request for the following information is denied because it relates to a "pattern and practice" of discrimination and not to the individual instance of discrimination as alleged in plaintiff's complaint.

13

- Specific information about all permanently employed African Americans at the GS-14 level employed in 2002 and 2003.
- Specific information about Caucasians employed at the GS-14 level for years 2002 and 2003.
- Statistics comparing the applicant pools and the rate of selection for African Americans and Caucasians at GS-14 for VHA and VBA of jobs filled from within the VA for the years 2002 and 2003.
- A report showing the names of permanent employees of VHA by race and sex who were detailed to GS-14 positions along with their dates of promotions, the beginning and ending dates of each detail, the division assigned to prior and after the detail, and the position promoted to for years 2002 and 2003.
- A report listing the names of the managers or supervisors by sex and race for VHA who approved any details to GS-14 positions including the names of managers or supervisors who also served as selecting officials for each detail that resulted in a promotion.

Plaintiff's request for the following information is denied because it is beyond the scope of the claims brought forth by plaintiff.

- Please provide a report of statistics by race and sex showing the number of retaliation and race based complaints filed by VHA and VBA employees for years 2002, 2003, 2004, 2005, 2006, 2007.
- A report showing the statistics of all permanent employees at any levels employed by VHA for the years 2002, 2003, 2004, 2005, 2006, 2007 who filed age discrimination complaints against the VA.
- Please provide a report showing the statistics of all VA employees who work remotely relative to a location where their immediate supervisor/team leader or manager is located, and including those who tele-commute or tele-work for the years 2000, 2001, 2002, 2003, 2004, 2005, 2006, 2007.

14

- Please provide a report showing the vacancy announcement numbers, vacancy description, successful candidates by race and sex, the number of applicants by race and sex, names of each member of the review boards by race and sex (for each announcement), names of each selecting official by race and sex (for each announcement), and the actions taken by the VA, for all vacancy positions applied for by Lester Patrick from 1992 through 2007 including but not limited to vacancy announcements IT-04-35, IT-04-47,1T04-55, IT-04-67, 1T05-17, IT-05-360, IT-05-400, IT-05-341,lT-06-130, IT-06-03, IT-06-67. IT-05-84, IT-06-482, IT-06- 394, IT-06-380, IT-7-130,lT-07-211, IT-07-170, IT-07-137, Vacancy lD:133976.
- Please provide organizational charts for the VA showing specific breakouts of the organizations within VHA, each director's name, each team leader's name, all names of employees within each team, by sex and race for years 2000, 2001, 2002, 2003, 2004, 2005, 2006, 2007.

Plaintiff also seems to contend that defendant has failed to adequately answer interrogatories number 2–5, 7 and 11 that he presented to defendant. These interrogatories asked defendant to:

- Identify all formal training that focused upon the Federal Employee Selection Process. Give dates, the number of hours attended, whether a certificate was awarded to Anke Linton, Michael Lay, Gerard Berry, and/or Gary Twedt.
- Identify all selection panels that Anke Linton, Michael Lay, Gerard Berry, and Gary Twedt served on since 1995 whereby the targeted grade was for GS-14 or higher.
- Identify all selection panels that Anke Linton, Michael Lay, Gerard Barry, and Gary Twedt served on since 1995 for GS- 14 or higher whereby the successful candidate was African-American.
- Identify all selection panels that Anke Linton, Michael Lay, Gerard Barry, and Gary Twedt served on since 1995 for GS-14 or higher whereby the successful candidate was Caucasian.
- Identify any training certificates held, dates, issuing authority, etc. to Anke Linton, Michael Lay, Gerard Barry, and Gary Twedt.

15

- Identify the number of African Americans that Anke Linton, Michael Lay, Gerard Barry, and Gary Twedt currently and at the time of the position in question had and/or have serving in GS-14 positions and above who report directly or indirectly to them.

In essence, plaintiff contends that defendant did not provide information relating to the interview panelists and their experiences on other panels, their selection decisions in those settings, and of their workplace interactions with African-Americans generally from 2002 to 2007. The VA has provided the information to the extent it is within its possession. They have declined to provide the information to the extent that they do not maintain historical records of that information. The remaining information, if any, could have been elicited through depositions of the panelists, however, plaintiff has chosen not to conduct depositions of those individuals. Consequently, the motion to compel is DENIED.

IV.   Motion to Stay

Since the court denies plaintiff's motion to compel, the basis for plaintiff's motion to stay has been eliminated. Consequently, plaintiff's motion to stay is DENIED.

CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is GRANTED; defendant's motion to strike is DENIED; plaintiff's motion to compel is DENIED; and plaintiff's motion to stay is DENIED.

IT IS SO ORDERED.

Dated: May 16, 2008

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

**ENDNOTES**

1.  Linton favored Bradley over Patrick by a tally of 41-32. Linton Dec., ¶ 8, Exh. A. Lay favored Bradley 46-45. Lay Dec., ¶ 6, Exh. A. Finally, Twedt favored Bradley 50-43. Twedt Dec., ¶ 8, Exh. A. A mathematical error caused Bradley's score to be incorrectly reported as 142.

2.  This court recites the Judge's decision by way of background only. His comments during the hearing are generally irrelevant since this action is not an appeal of his decision.

3.  Plaintiff's opposition is more than twice the number of pages allowed by the local rules. Though the court denies defendant's current motion to strike the excessive pages because plaintiff is a pro se litigant, it warns plaintiff that this court will not allow further violations of the local rules.

4.  Patrick's contention that Bradley misrepresented his supervisory experience does not support a finding that Patrick was discriminated against by the panel. There is absolutely no evidence that the panel knew Bradley was misrepresenting his experience but nevertheless gave him credit for the same.

5.  In his claim for employment discrimination filed with the EEOC, Patrick merely stated, *inter alia*, that his "non-selection for this position further demonstrates a trend within the Customer Support of not selecting African Americans for any positions above GS-13. All promotions to GS-14 within Customer Support since 1998 have all been Caucasian." Lee Dec., Exh. B. There is no mention of interim appointments.

6.  The fact that plaintiff was hired for a GS-14 position that he eventually declined does not undercut this argument because the pattern and practice need not be followed with respect to every vacancy in order to violate constitutional and statutory requirements.

7.  Given the managerial responsibilities associated with the vacancy, the supervisory question would then clearly be properly included.

8.  Patrick also seems to argue disparate treatment elsewhere based on the fact that he was not asked questions about his budgeting experience.

9.  The timing of plaintiff's motion to compel and stay, filed after the summary judgment motion at issue here, seems to demonstrate that the motion was filed to delay the resolution of this action on the merits.